HAMBURGER *v.* VENESS.

1. **VENDOR AND PURCHASER—NOTICE OF PRIOR INTEREST.**
   A large sign on property containing an announcement signed as agent by one who quitclaimed his interest to plaintiff was insufficient notice to put the latter on inquiry as to the prior interest of one claiming under an agreement to purchase from said agent.[1]

2. **SAME—PRINCIPAL AND AGENT—NOTICE.**
   Notice of the vendee's agent, who induced plaintiff to assume an agreement to purchase land, of vendee's prior sale to another, *held*, not notice to plaintiff.[2]

3. **QUIETING TITLE.**
   In a suit to quiet title, record *held*, to show that defendant had no equity.[3]

Appeal from Oakland; Gillespie (Glenn S.), J. Submitted June 12, 1925. (Docket No. 70.) Decided October 1, 1925.

Bill by Charles Hamburger against George G. Veness to quiet title to land. From a decree for plaintiff, defendant appeals. Affirmed.

*Abram Shapiro* (*A. L. Moore*, of counsel), for plaintiff.

*Robert M. Dalton* (*F. L. Radford* and *Frank W. Atkinson*, of counsel), for defendant.

McDONALD, C. J. The purpose of this suit is to quiet title to lands in the township of Royal Oak, Oakland county, Michigan, through the cancellation and discharge from record of a certain agreement to purchase, given by one Harry C. Stopher to defendant

[1]Vendor and Purchaser, 39 Cyc. p. 1703; [2]Id., 39 Cyc. p. 1762; [3]Quieting Title, 32 Cyc. p. 1385.

Veness, on February 20, 1923, and recorded December 24, 1923.   The testimony tends to show that Israel Klavonsky owned the land in question and on the 20th of February, 1923, gave to Harry C. Stopher a preliminary purchase agreement of the property at a consideration of $35,000, of which $1,000 was paid on the date of the agreement, and $6,500 was to be paid on or before 90 days.   On payment of the $6,500 Klavonsky was to give Stopher a land contract which should provide for the payment of the balance of the purchase price in semi-annual installments.   Stopher was unable to pay the $6,500 when it became due.   He arranged with the plaintiff, Hamburger, to assume the Klavonsky contract and to give him back a 60-day option on the property for $36,000, of which $9,000 was to be paid on or before July 22d, and on the payment of which Stopher was to have a reassignment of the Klavonsky contract.   Stopher failed to make this payment and just before the option expired he recorded it in the office of the register of deeds. The plaintiff, Hamburger, subsequently learned that the option had been recorded.   On October 9, 1923, he paid Stopher $600 for a quitclaim deed of his interest in the property, which deed he caused to be recorded on October 18, 1923.   On December 24, 1923, the defendant Veness recorded an agreement to purchase this property which he claims to have received from Stopher on the 20th of February, 1923. The plaintiff then filed this bill to secure a discharge of the Veness agreement as a cloud upon his title. From a decree granting the relief prayed for in the bill, the defendant has appealed.

Assuming with some hesitation that there was a good-faith agreement between Stopher and Veness, we think the only question involved is whether the plaintiff had any notice, actual or constructive, of that agreement at the time that he acquired his interest

in the property.    Before the plaintiff entered into the transaction and when he received a quitclaim deed from Stopher, he caused the records to be examined, but there was nothing there showing any interest of the defendant.    During the summer of 1923, there was a large sign on the property which the defendant says was sufficient notice to put the plaintiff on inquiry as to prior interests.    The sign read as follows:

"Modern Homes Building Company owners of this property will build 200 houses here.
                    "HARRY C. STOPHER, agent."

The plaintiff says that he did not see this sign, but, if he had seen it, it would have given him no information that Veness was in possession of the property or had any prior interest in it.    The sign would have directed him to Harry C. Stopher whose interest the plaintiff knew about, and whose right to possession the plaintiff was not questioning.    Stopher had been dealing with him.    He had not told him of the prior interest of Veness and there was nothing in the matter of the sign that rendered it his duty to make further inquiries of Stopher.

On the question of notice it is further claimed by the defendant that in his transaction with Stopher the plaintiff was represented by an agent, one Leonard Brown, who had notice of the prior interest of Veness and that notice to the agent is notice to the principal. When Stopher realized that he could not carry on his contract with Klavonsky he employed Leonard Brown to interest the plaintiff or some other party in the matter.    Brown persuaded the plaintiff to enter the deal and for his services in doing so Stopher paid him $250.    Brown was Stopher's agent and if he had any knowledge of the Veness interest he did not communicate it to the plaintiff.    The fact of the matter is that while the transaction with the plaintiff was being carried on Stopher and Veness, who was in

close touch with him throughout, carefully concealed from the plaintiff that Veness had any equity in the property.    The record is rather conclusive that he had no equity.    The circuit judge correctly sensed the situation and in a carefully prepared opinion expressed his views, which we quote with approval as follows:

"At the outset it seemed to me that the circumstances under which Veness claimed to have contracted to purchase the property from Stopher were, to say the least, extremely unusual.    They occupied the same office and had been engaged in the business of buying land contracts.    Stopher testified that he talked with Veness about taking an interest in the property even before he, Stopher, made the contract with Klavonsky.    Three days before that contract was entered into Veness had given Stopher a check for $1,000 to apply upon the purchase price of the premises which Stopher had not yet acquired. Stopher used this money to make the first payment on his contract with Klavonsky.    After seeing the witnesses on the stand and considering their previous experiences and relationship, it does not seem reasonable that Veness would agree to pay his office associate Stopher $7,000 profit on a parcel of land, the down payment on which had been paid with Veness's own money.    Defendant's claim that the transaction was a *bona fide* sale seems all the more improbable in view of the fact that Veness gave Stopher promissory notes for the remainder of the payments due under the contract in question but never paid the notes nor any interest thereon, and that no proceedings were ever taken to effect a collection.    Neither of the defendants were in a position to make the down payment of $6,500 called for by Klavonsky's contract.    Veness knew that the contract from Klavonsky ran to plaintiff and that his vendor, Stopher, had only a 60-day option to purchase the property, yet even after being informed that Stopher had given plaintiff a quitclaim deed took no steps to assert the interest which he now claims in the property.    He paid no taxes and made no attempt to notify plaintiff of his claimed interest in the premises until after Stopher had ex-

tracted $600 from plaintiff for the quitclaim deed. Shortly thereafter Veness followed Stopher's example and recorded his agreement for the purchase of the property. If Veness had actually intended to claim any interest in the property I cannot conceive why he should remain silent for nearly one year with full knowledge that his vendor, Stopher, had conveyed all of his interest in the property to plaintiff and was not in a position to fulfill the agreement. Possibly the increase in value of the premises now has something to do with his belated claim."

A decree will be entered in this court granting the relief prayed for in the bill. The plaintiff will have costs.

CLARK, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred. WIEST, J., concurred in the result.